UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HOWELL EALY                              CIVIL ACTION NO. 13-cv-0465

VERSUS                                   JUDGE FOOTE

JERRY GOODWIN                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Howell Ealy ("Petitioner") was charged with two counts of aggravated battery on Barronette Chism (his girlfriend) and her friend Marilin Andrews. A six-member Caddo Parish jury found him guilty on both counts, but the trial judge granted a post-verdict motion and reduced one count to simple battery. The reduction was based on evidence that Petitioner struck Ms. Chism only with his fists rather than a dangerous weapon.

Petitioner was adjudicated a fourth-felony offender and given an enhanced sentence of 40 years without benefits. The conviction and sentence were affirmed on direct appeal. State v. Ealy, 12 So.3d 1052 (La. App. 2nd Cir. 2009), writ denied, 27 So.3d 298 (La. 2010). A post-conviction application was also denied. State ex rel. Ealy v. State, 97 So.3d 1011 (La. 2012).

Petitioner now seeks federal habeas relief from his conviction for aggravated battery of Marilin Andrews. He argues that (1) the State denied his rights under the Confrontation Clause, (2) The prosecutor referred to unproven facts in her closing argument, (3) the trial

court erred in allowing the introduction of other crimes evidence, and (4) trial counsel rendered ineffective assistance because she did not adequately investigate or prepare for trial. For the reasons that follow, it is recommended the petition be denied.

## Relevant Facts

Marilin Andrews was friends with Barronette Chism, who she called Barry.  Marilin rented a home in Shreveport from Barry's mother.  Marilin testified at trial that Barry and her young grandchild came for a visit one evening.  Barry and Petitioner had been a couple for some time, and they had once lived in the house that Marilin was renting.

Marilin testified that someone came to the door that evening, looking for Barry's daughter.  Barry stepped outside to talk to the person.  Marilin stayed in the house and was feeding Barry's grandchild ice cream.

Petitioner then entered the house and asked where Barry was.  Marilin said that she didn't know, and Petitioner accused her of lying.  He then went upstairs to look for Barry. Marilin described the events afterwards as follows:

> And then he just off like on me, saying you know where she went.  You know this and that.  And I said no, what is you talking about?  I don't know what, you know, what she, this and that.  So the next thing I know, he going pull a thing down off the thing and going to hit me across shoulder and tell me he'd show me how a man whoop a woman 'a,' you know, and this and that.  And the baby was hollering.  And then he went to slinging.  I tried to get the phone. He got the phone, took it from me and just went to throwing my stuff.  Broke my glasses.  Tore my - - I had my tele - - cell phone on charge, he tore all that up.  He was just throwing.  And the baby just hollering and then a little scratch on the baby,  just hollering.
>
> About that time, she come in - - Barry - - and he got her.  Which he came and jumped and hit me for any kind of reason.  He hit me twice on my shoulder.

Marilin described the object that Petitioner used as "like a wood thing" that was near the door and used to hang a coat or purse on.  She testified that he "struck me twice" with the object.  The prosecutor asked Marilin if Petitioner grabbed any sort of object and beat Barry with it.  Marilin said: "No.  He was just beating her with his fists, I guess."  She said it took her two or three days to get all of the blood cleaned from the house after Petitioner attacked them "like a madman."

Officer Patterson was the first officer to respond to the call, but he did not testify at trial because he was on medical leave.  Officer Michael Presley did testify.  He said he spoke with Barry and her mother who "explained to me that Barronette, the daughter, had been beaten with a metal pipe about her face and head earlier that morning over at a friend's home."  He went on to say that the two women "told me" that Petitioner had pushed his way into Marilin's residence and "hit Ms. Anderson with the pipe and also hit Ms. Barronette Chism with the pipe and left the residence."  He said that he saw that Barronette Chism had dried blood on her face and "you could tell she had been struck about the face, facial area."  Presley said he believed photographs had been taken, but the system had malfunctioned so that they never made it to the station.  (Police reports, not filed in evidence, indicated that the weapon was a silver aluminum or metal broom handle.  Tr. 10, 11, 26)

On cross-examination, defense counsel Sarah Giddens asked Officer Presley if he recalled if Ms. Chism had stitches or said exactly what her "damages" were.  Prosecutor Bennet Langford objected on the grounds of hearsay, but Judge Jeanette Garrett reminded the prosecution that it had made full use of hearsay during Presley's direct examination, and

the prosecutor withdrew the objection.  Presley then said he could not recall if Ms. Chism specifically told him what type of injuries she was treated for.  Presley said he never spoke to Marilin Andrews.

Petitioner, who admitted to a number of prior felonies and misdemeanors, testified that he was visiting pawn shops with his brother when his brother took him by Ms. Andrews' home to get some cigarettes and a drink that Barronette Chism had made for Petitioner. Petitioner said he noticed that Marilin Andrews was using crack cocaine in front of Ms. Chism's nine-month-old grandchild, and he threatened to call the police.  Ms. Chism then entered the room, and Petitioner repeated his concern about the drug use.  Ms. Chism allegedly denied that they were using drugs in the house.  Petitioner said both women told him they would get him "in some trouble" if he called the police.  There is no claim or indication that he actually called the police about his concerns.  Petitioner said he went home and went to sleep, and he awoke when police came to arrest him for these charges.

The jury found Petitioner guilty on both counts of aggravated battery, which is a battery committed with a dangerous weapon.  La. R.S. 14:34.  The trial judge granted a motion for post-verdict acquittal as to the count regarding Ms. Chism because Ms. Andrews had testified that Petitioner struck Chism with his fists, but not a dangerous weapon. The judge discounted the police officer's testimony on the issue as "confusing."  She noted that Petitioner's pre-sentence report showed "a series of battery, after battery, after battery, after battery, after battery" that was part of a "long history of violence upon women."  Petitioner faced an enhanced sentencing range of 20 years to life for the aggravated battery.  The judge

imposed 40 years without benefits, plus a concurrent six months on the simple battery.  Tr. 177-84.

**Confrontation Clause**

Petitioner argues that the trial court violated his rights under the Confrontation Clause as set forth in Crawford v. Washington, 124 S.Ct. 1354 (2004).  The Supreme Court held in Crawford that out-of-court statements by a witness that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements might be deemed reliable.  Thus, a wife's out-of-court statements to police officers about her husband stabbing her violated the Confrontation Clause.  Violations of the rule are, however, subject to a harmless error analysis.  Bullcoming v. New Mexico, 131 S.Ct. 2705, 2719 n. 11 (2011); Fratta v. Quarterman, 536 F.3d 485, 507-08 (5th Cir. 2008).

Petitioner made a Crawford argument on direct appeal that there were six violations. The appellate court found only two instances where there were statements of persons who did not testify that were mentioned at trial.  First, Officer Presley stated what Ms. Chism and her mother told him about the attack with a metal pipe, testimony to which the defense did not object.  Second was Presley's statement to defense counsel as to what Ms. Chism said about the nature of her injuries.  The appellate court determined that Presley's hearsay testimony that Ms. Chism and her mother said Chism was beaten with a pipe was harmless because, to the extent the jury relied on it, the judge threw out the conviction for aggravated battery of Ms. Chism and neutralized the issue.  Officer Presley said he did not remember

Page 5 of  17

what Chism said about any injuries, so there was no harm there either.  State v. Ealy, 12 So.3d at 1057-58.

Petitioner raised somewhat different Crawford claims in its post-conviction application (Tr. 357-61), and it is largely those arguments that he presents in his federal petition.  Judge Michael Pitman denied the claims on the grounds that, in his view, the same allegations had been addressed on direct appeal so were repetitive.  Tr. 451. The state appellate court denied a writ with a one-sentence ruling: "Upon the showing made, the exercise of this Court's supervisory jurisdiction is not warranted."  Tr. 495.  The Supreme Court of Louisiana denied writs without comment.  Tr. 563.

To the extent the Crawford claims presented to this court were adjudicated on the merits, as opposed to procedural grounds, habeas relief is available only if the state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Many of Petitioner's arguments misunderstand his rights under the Confrontation Clause.  For example, he complains that the prosecution should have been required to establish that Officer Patterson, Barronette Chism, and relevant medical records were unavailable by submitting to the court evidence of the State's attempts to locate those witnesses and documents for the trial.  The Confrontation Clause did not require the State to

assemble all relevant evidence so that Petitioner may make use of it. Rather, it bars out-of-court statements by witnesses that were not subject to cross-examination. The State did not offer into evidence any remarks from the medical records, statements by Officer Patterson, or (other than as discussed on direct appeal) statements from Ms. Chism. The state court's adjudication of the Chism hearsay, introduced through Officer Presley, was a reasonable adjudication of the claim because the post-verdict acquittal on one count largely nullified the importance of that testimony.

Petitioner argues that if Officer Patterson had testified at trial, the defense could have cross-examined him about statements in his report that were inconsistent with the prosecution's theory of the case. Petitioner says there were inconsistencies about matters such as the identity of victims, whether paramedics responded or the victims went to a hospital, and the like. Defense counsel did make use of such information in the police reports to cross-examine Ms. Andrews and Officer Presley, as well as in her closing argument. The Confrontation Clause does not undermine the conviction because the court or the State did not mandate Officer Patterson to testify at trial so that the defense could have also cross-examined him.

The same is true with respect to Petitioner's complaints that the trial court did not somehow allow for him to cross-examine Ms. Chism, who did not appear at trial. The Confrontation Clause did not require that she show up at trial. The defense could have attempted to subpoena Ms. Chism, but wise defense counsel usually prefer that victims do

not testify. Petitioner has not demonstrated that the Confrontation Clause entitles him to habeas relief from his conviction for the aggravated battery of Marilin Andrews.

**Improper Closing Argument**

Defense counsel focused her closing argument on the credibility of the witnesses and the weight of the evidence. She noted that Ms. Chism was not there, so the jury did not know what she saw or heard, and counsel said she was sorry Ms. Chism was not there to tell what happened. She also noted the lack of photographs and discrepancies between the police reports and witness testimony. Prosecutor Karelia Stewart, in rebuttal, began with these remarks:

> I would like to point out that you have not heard from the other victim, but Mr. Langford and I would not be doing our job if we did not proceed on her behalf. It is very important in terms of our prosecution that, you know, there are always victims that are afraid, and it would not be becoming of us to just, you know, look past what happened to her in terms of her injuries and all of that. I understand that you have not heard from her, but a lot of times there may be instances where you may not hear from a victim; however, that does not make light of the other testimony that you have heard today.

She then turned to the evidence, such as Officer Presley's testimony about what he saw when he met with Ms. Chism.

Petitioner complained in his post-conviction application that the trial court erred by allowing "unsubstantiated evidence" from the prosecutor in the form of her suggestion that the victim was afraid to be part of the trial. The trial court rejected it as waived due to the lack of an objection at trial and because Petitioner had not presented "sufficient evidence to

support his claim." Tr. 451.  The claim was summarily denied at the other levels of the state court system.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.  <u>Jones v. Butler</u>, 864 F.2d 348, 356 (5th Cir. 1988); <u>Turner v. Johnson</u>, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

This claim was denied on the merits in state court, so habeas relief id not available unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The misconduct here, if there was any, was certainly not persistent or pronounced. There was no direct assertion that Ms. Chism was herself afraid, although a reasonable inference could be drawn that the prosecutor suggested she was.  The argument was not offered in a way that attacked Petitioner.  Rather, the prosecutor was pointing out that prosecutors must go forward, and juries must consider and weigh all of the evidence, even if a victim chooses not to testify.  Considering the brief reference and putting it in context,

the argument, to the extent it was inappropriate, did not so infect the trial with unfairness as to make the conviction a denial of due process.

**Other Crimes Evidence**

In the lengthy quotation above from Ms. Andrews' description of the attack, she mentioned that Ms. Chism's grandchild was present while Petitioner beat her, took the phone from her, broke her glasses, and generally destroyed property. She mentioned that "the baby just hollering and then a little scratch on the baby, just hollering." Petitioner argues that the trial court erred in allowing the introduction of "other crimes" evidence that he harmed the child. Petitioner argued in his post-conviction application that this made his conviction "unconstitutional," but he relied solely on state evidentiary law regarding the admission of such evidence. Tr. 363-365.

An application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This requires the prisoner to fairly present a federal claim in each appropriate state court and give those courts a first opportunity to correct alleged violations of federal rights. Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 115 S. Ct. 887, 888 (1995). Petitioner did not clearly identify a federal constitutional claim in connection with this issue, so he did not meet the exhaustion requirement.

Petitioner continues to rely solely on state law in his brief to this court.  Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules. The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).  Habeas relief would not be available even if Petitioner were correct in his interpretation of state evidence law.

Even if it is assumed that Petitioner exhausted and presented to this court a federal claim based on this evidentiary issue, it lacks merit.[1]  First, Petitioner faults the trial court for admitting the evidence, but the reference was made quickly in the midst of a description, and there was not even an objection for the trial court to act upon.  The reference was quite brief, to a mere scratch, and likely admissible under the res gestae provision of Louisiana evidence law.  That rule allows the admission of other crimes evidence, even without prior notice and a hearing, if it is part of a witness's description of what they heard or saw before, during, or after the commission of the crime if a continuous chain of events is evident under the circumstances.  State v. Grant, 954 So.2d 823, 834-35 (La. App. 2d Cir. 2007); Langston v. Warden, 2015 WL 1508322, *10 (W. D. La. 2015).  There was no further reference to the

---

[1] The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).  The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict.  Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

alleged scratch to the baby, either in testimony or argument, so the remark was not so unduly prejudicial as to render the trial fundamentally unfair.  Relief is not available on this claim.

**Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel was ineffective for failing to adequately investigate and prepare for trial.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner presented substantially the same claims in his post-conviction application. He argued that counsel should have better investigated whether Petitioner was armed with a dangerous weapon and whether the victims were treated for injuries.  He based those contentions on conflicting information in police reports about whether the weapon was a metal broom handle or a wooden object, as well as conflicts about whether the victims were treated by paramedics or a hospital.  Petitioner also complained that defense counsel did not object to Ms. Andrews' "baby scratch" testimony and did not object to hearsay presented at trial.  Tr. 365-67.

The trial court rejected the claim that counsel failed to investigate a plausible defense or interview available witnesses because "Petitioner's only support for this claim is a substantive attack on the sufficiency of the evidence."  The trial court also noted that the appellate court had reviewed an ineffective assistance argument on appeal regarding the lack

Page 12 of  17

of a hearsay objection and found it to lack merit.  Tr. 452.  The Second Circuit, on direct appeal, did address a Strickland claim that counsel should have objected to hearsay or Crawford issues.  After finding that the underlying harm was neutralized by the post-verdict acquittal on one count, the appellate court determined that the related claim of ineffective assistance of counsel lacked merit.  State v. Ealy, 12 So.3d at 1058.

Petitioner's Strickland claims were thus adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  Id. And the standard "applies even where there has been a summary denial" by the state court. Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).

The record shows that counsel did cross-examine the witnesses about discrepancies as to whether the attack involved fists, a wooden object, or an aluminum broom handle.  She also questioned the witnesses about whether the victims went to the hospital, paramedics were called, or if there was no treatment.  She then made use of those issues in her closing argument when she pointed to the various conflicts in the evidence.  There is no indication that more investigation on these issues would have led to a different verdict.

Petitioner faults counsel for not calling Officer Patterson as a witness.  Patterson was said to be unavailable because he was on leave recovering from an "extremely painful shoulder surgery."  Tr. 102.  Most defense attorneys and defendants would jump for joy if told the principal investigating officer was not available for trial, but Petitioner argues that his counsel was constitutionally deficient for not calling the officer from his sickbed.  For defense counsel to insist on Patterson's testimony would be unexpected, and it would not likely have helped the defense.

Patterson's reports indicate that he would have testified that he was sent to investigate a battery report, he interviewed Barronette Chism, and the fire department was called to give treatment for minor injuries.  Tr. 22-28. If Petitioner had insisted on asking Patterson what Ms. Chism told him, which would be hearsay, Patterson would have said (per his report) that Petitioner had an  "aluminum pipe and hit her (Chism) in the face and head area numerous times, breaking her false teeth, busting her nose and lip, then fled the scene."  Tr. 25. That would have been just what the State needed to nail down a second conviction for aggravated battery.

Petitioner nonetheless speculates that Patterson could have helped the defense, but "complaints of uncalled witnesses are not favored in federal habeas corpus review becaus allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009). Petitioner did not make this showing to the state court by affidavit or other evidence, so his claim lacks merit. Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ...").

The state court addressed all of Petitioner's Strickland claims, either on direct appeal or in the post-conviction application. The facts were assessed in light of the proper legal standard, and reasonable decisions were made. The demanding standard of Section 2254(d) does not permit habeas relief in these circumstances.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of February, 2016.

Mark L. Hornsby
U.S. Magistrate Judge